UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIE WASHINGTON,

    Plaintiff,

v.

JOHN DOE, et al.,

    Defendants.
                                /

Case No. 2:20-cv-10149

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER PARTIALLY
DISMISSING COMPLAINT AND DIRECTING
SERVICE UPON THE REMAINING DEFENDANTS AS TO
THE REMAINING CLAIM BY THE UNITED STATES MARSHALS**

On January 22, 2020, Plaintiff Willie Washington, a state prisoner incarcerated at the Brooks Correctional Facility in Muskegon, Michigan, filed a pro se complaint pursuant to 42 U.S.C. § 1983. ECF 1. He alleged violations of his Eighth Amendment right against cruel and unusual punishment stemming from inadequate medical care and from an alleged assault by jail officials. *Id.* Washington is permitted to proceed in the present case without prepaying fees or costs ("IFP"). ECF 4.

For the following reasons, the Court will dismiss Washington's claims alleging inadequate medical care and direct the United States Marshals to serve his complaint upon the remaining Defendants Macomb County and the four unnamed jail officials allegedly involved in the assault at the Macomb County Jail. In order to effectuate service upon the unnamed Defendant jail officials, Washington is ordered to properly identify these four Defendants so service upon them may be effectuated.

1

## BACKGROUND

Washington brought his prisoner civil rights action against Macomb County and various prison staff personnel, including doctors, nurses, and prison officials. *Id.* at 9. During the relevant times, Washington was incarcerated in Macomb County Jail. ECF 1, PgID 6. He was taken into custody on or about January 30, 2018, and his claims allegedly occurred from that date until May 2, 2018. *Id.* He alleged two broader incidents that violated his Eighth Amendment rights: inadequate medical care and an assault by prison officials in his cell. *Id.* at 10–18.

As to the claims of inadequate medical care, Washington alleged that prior to being taken into custody, he had an ongoing heart condition and high blood pressure and had recently had some complications relating to his condition. *Id.* at 10. He also informed the nurse completing his booking protocol about his illness and his need for various daily prescriptions, for which the nurse called his pharmacy to determine the exact names of the drugs he needed. *Id.* But despite providing notice of his needed medications, he did not receive any for at least two days. *Id.* at 11. And when he finally did receive some medications, they were not the same prescriptions he had been taking previously. *Id.* On the several occasions that nursing staff would administer the daily medication, they would check Washington's blood pressure and heart rate. *Id.* And Washington alleged that each time, his blood pressure would be "extremely high" but that the nursing staff and prison doctors would not do anything other than tell him to give it time for the medication to take effect. *Id.* Washington

2

alleged that his blood pressure never stabilized and that no one would change his medication to fix it. *Id.* at 11–12.

He then alleged that he began to feel lightheaded and dizzy and requested medical attention through various means via the jail's systems and policies. *Id.* at 12–13. Washington alleged that his high blood pressure continued and he had the same symptoms of lightheadedness and dizziness off and on for two to three months. *Id.* at 14. On May 2, 2018, the day that he was due in court, Washington alleged that he could no longer stand up and that, upon a check-up by the prison doctor, his heart rate was determined to be extremely low and decreasing and he was sent to the emergency room. *Id.* at 14–15. At the emergency room, Washington alleged that the doctor stated that he had been given medication that was affecting his heart rate. *Id.* at 16. He was "cleaned" of that medication, treated for an RCA clog, and then released back to the jail. *Id.*

As to the assault allegations, Washington claims that upon his return from the emergency room, jail staff threw him to the ground, kneed him in the side, and smacked his eye glasses off his face. *Id.* The officers began calling him offensive slurs and names and dragged him into his cell where they continued to assault him. *Id.* at 16–17. After the officers left his cell, another officer and a nurse came in and checked his blood pressure, which was again abnormally high. *Id.* at 17. Because Washington feared for his life and feared he would have another heart attack, he filed a grievance related to the assault. *Id.* To his knowledge, no action has been taken against the officials. *Id.*

## DISCUSSION

The Court screens IFP complaints and must dismiss a case if it fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2). The Court liberally construes pro se-litigant filings, and dismissal of a case is appropriate only when the "claim is based on an indisputably meritless legal theory." *Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998) (internal quotations and citation omitted). "In determining whether a complaint states a claim, a court must construe the complaint in a light most favorable to the plaintiff [and] accept all factual allegations as true[.]" *Goldman v. Consumers Credit Union*, No. 17–1700, 2018 WL 3089811, at *3 (6th Cir. Feb. 14, 2018) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

As an initial matter, the allegations seem to have occurred while Washington was in pretrial detention, not while he was incarcerated as a convicted prisoner. The Eighth Amendment prohibition against cruel and unusual punishment therefore has no application because it only applies to those convicted of crimes. *See Butler v. Jewell*, 869 F.2d 1488 (Table) (6th Cir. 1989) (citing *Bell v. Wolfish,* 441 U.S. 520, 535 n.16 (1979). But the protection afforded under the Eighth Amendment is available to pretrial detainees under the Fourteenth Amendment's Due Process Clause. *See id.* (citing *Whitley v. Albers,* 475 U.S. 312 (1986)). The Court will therefore construe Washington's claims as under the Fourteenth Amendment.

The analysis of a pretrial detainee's claim of cruel and unusual punishment under Fourteenth Amendment due process is substantially the same as a convicted prisoner's claim under the Eight Amendment. *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005). The Eighth Amendment imposes duties on prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care," and to "'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). A violation of the Eighth Amendment is, however, only cognizable when two requirements are met: (1) the deprivation alleged must be objectively "sufficiently serious," *i.e.*, a prison official's actions or omissions must result in the denial of the "minimal civilized measure of life's necessities;" and (2) "a prison official must have a "sufficiently culpable state of mind"—"deliberate indifference" to inmate health and safety." *Id.* at 834 (internal citations omitted).

I. <u>Medical Indifference Claim</u>

Washington first claims that four jail officials and medical staff were indifferent to his medical needs because they prescribed him the wrong medications for his heart condition and hypertension. Generally, a complaint that jail medical staff was negligent in diagnosing or treating a medical condition of a prisoner does not state a valid claim of medical mistreatment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "[M]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* at 106. An Eighth Amendment claim of deliberate indifference must be supported by more than mere

5

negligence. *See Harrison v. Ash,* 539 F.3d 510, 522 (6th Cir. 2008). Thus, "[w]hen a [medical professional] provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Comstock v. McCrary,* 273 F.3d 693, 703 (6th Cir. 2001).

Here, Washington does not allege that Defendants completely ignored his medical condition but only appears to disagree with the course of treatment and raises claims housed more in malpractice. "A disagreement with a course of medical treatment does not rise to the level of a federal constitutional claim under the Eighth Amendment." *Rhinehart v. Scutt*, 894 F.3d 721, 744 (6th Cir. 2018). Instead, "'forms of treatment' are generally 'a classic example of a matter for medical judgment' that 'does not represent cruel and unusual punishment.'" *Id.* at 744–45 (quoting *Estelle*, 429 U.S. at 107)). Washington's claim against the jail medical personnel amounts to no more than a medical malpractice claim which is non-cognizable in a § 1983 action. *See Rumsey v. Martin*, 28 F. App'x. 500, 501-02 (6th Cir. 2002). The Court will therefore dismiss the medical indifference claim.

II. <u>Assault Claim</u>

Washington's assault claims, on the other hand, meet the two-prong test under the Eighth Amendment at the initial pleadings stage. He alleged that jail officials, unprovoked, called him offensive slurs and names, slammed him to the ground, and beat him—a seemingly malicious use of force. *See Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992). Taking the allegations in the light most favorable to Washington, he has

6

sufficiently pleaded his claims for violations of his right to be free from cruel and unusual punishment as a pretrial detainee under the Fourteenth Amendment. His assault claim may therefore proceed against Macomb County and the unnamed Defendant jail officials.

But Washington must adequately identify the Defendant jail officials before the summons and complaint may be served on them. When a plaintiff is proceeding IFP, as Washington is, the Court bears the responsibility for issuing Plaintiff's process to a United States Marshals, who in turn must effectuate service upon Defendants once Plaintiff has properly identified them in the complaint. *See Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996); Fed. R. Civ. P. 4(c)(2); 28 U.S.C. § 1915(d). Although courts generally do not favor use of "John/Jane Doe" placeholders, where the identity of a party is unknown prior to the filing of a complaint, courts generally allow a plaintiff to identify the unknown defendant through discovery, unless it is clear that discovery would not uncover the identities of the defendants. *See Yates v. Young,* 772 F. 2d 909 (Table), No. 1985 WL 13614, *2 (6th Cir. Aug. 28, 1985) (citing *Schiff v. Kennedy,* 691 F.2d 196 (4th Cir. 1982); *Gillespie v. Civiletti,* 629 F.2d 637 (9th Cir. 1980)).

The Court is satisfied that, through discovery, the identities of the unnamed Defendants involved in the alleged assault could be revealed. The Court will therefore order Washington to diligently work to identify unnamed Defendants five through eight and will direct the United States Marshals to serve the appropriate papers on

Defendant Macomb County and upon unnamed Defendants five through eight once they are properly identified.

**ORDER**

**WHEREFORE**, it is hereby **ORDERED** that the complaint is **PARTIALLY DISMISSED**. Washington's claims against Defendant Macomb County and unnamed Defendants two through four relating to inadequate medical care are **DISMISSED**. His claims against Defendant Macomb County and unnamed Defendants five through eight relating to the assault by jail officials may **CONTINUE**.

**IT IS FURTHER ORDERED** that Washington shall properly **IDENTIFY** unnamed Defendants five through eight.

**IT IS FURTHER ORDERED** that the United States Marshals shall **SERVE** the appropriate papers in this case on Defendant Macomb County, and upon unnamed Defendants five through eight once they are properly identified, without prepayment of costs for such service. The Marshals may collect the usual and customary costs from Washington after effecting service.

**SO ORDERED.**

s/ Stephen J. Murphy, III  
STEPHEN J. MURPHY, III  
United States District Judge

Dated: February 20, 2020

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 20, 2020, by electronic and/or ordinary mail.

s/ David P. Parker  
Case Manager

8